UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUSSIA BROWN, )<br>    Plaintiff, )<br> )<br>  v. )<br> )<br>CHICAGO TRANSIT AUTHORITY and )<br>AMALGAMATED TRANSIT UNION, )<br>LOCAL 241, )<br> )<br>    Defendants. ) | Case No. 22-c-675 |

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiff RUSSIA BROWN ("Plaintiff"), by and through undersigned Counsel, and brings this civil rights action against Defendant, CHICAGO TRANSIT AUTHORITY ("CTA") and Defendant AMALGAMATED TRANSIT UNION, LOCAL 241 ("ATU Local 241") (collectively "Defendants") for employment discrimination and retaliation against Plaintiff on the basis of his sex, gender identity, and transgender status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, U.S. Const. amend. XIV, §1. Plaintiff brings this civil rights action against ATU Local 241, a certified labor organization representing bus operators for the Defendant CTA for discrimination and retaliation against Plaintiff on the basis of his sex, gender identity, and transgender status in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. Plaintiff also brings claims of retaliation and interference of exercise of rights under the Family Medical Leave Act. In support of his claims, Plaintiff states as follows:

**JURISIDICTION AND VENUE**

1. Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the laws of the United States. This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutionally protected rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution and under Title VII of the Civil Rights Act of 1964, as amended, for

1

sex, gender identity, and transgender status discrimination and retaliation, and for violations of the Family Medical Leave Act.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

3. On or about April 30, 2021, Plaintiff filed a charge of discrimination against Defendant ATU Local 241 with Equal Employment Opportunity Commission and the Illinois Department of Human Rights. On or about November 9, 2021, Plaintiff received Notice of Right to Sue from the EEOC, authorizing him to commence this lawsuit.

4. On or about April 30, 2021, Plaintiff filed a charge of discrimination against Defendant CTA with Equal Employment Opportunity Commission and the Illinois Department of Human Rights. On or about February 4, 2022, Plaintiff received Notice of Right to Sue from the United States Department of Justice, authorizing him to commence this lawsuit.

**PARTIES**

5. Plaintiff RUSSIA BROWN resides in the Northern District of Illinois. He was an employee for Defendant CTA from in or around 2016 until January 2021.

6. Defendant CTA is a municipal corporation with its principal office in the City of Chicago. At all times relevant to this action, Defendant CTA has employed more than 15 individuals.

7. Defendant ATU Local 241 is a certified Illinois labor organization representing the bus operators employed by the Defendant CTA, including Plaintiff. Defendant ATU Local 241's principal office is in the City of Chicago.

**FACTUAL ALLEGATIONS**

8. Plaintiff identifies his gender as male.

9. Plaintiff is a transgender person. A transgender person is someone whose gender identity diverges from the sex they were assigned at birth. A transgender man's sex is male (despite being assigned the sex of female at birth).

10. Gender identity – a person's core internal sense of their own gender – is the primary factor

in determining a person's sex. Every person has a gender identity.

11. Gender identity and transgender status are inextricably linked to one's sex and are sex-related characteristics.

12. Despite increasing visibility, transgender persons are still subject to high levels of discrimination. These acts of discrimination include harassment, violence, insults, and misgendering.

13. Plaintiff started working for Defendant CTA as an employee in or around 2016.

14. Defendant CTA hired Plaintiff as a bus operator.

15. Plaintiff was at all times performing his job duties in a satisfactory manner.

16. Defendants created a work environment in which Plaintiff was a victim of discrimination and harassment.

17. In 2017, an employee at Defendant CTA raised an issue with Plaintiff using the men's restroom. While a representative from CTA's EEO told Plaintiff he was allowed to use the men's restroom. After this, the general manager of Plaintiff's garage told Plaintiff to instead use the clerk's restroom to be "safer" because he did not want employees that complained about Plaintiff's use of the men's restroom to get into trouble.

18. Per the general manager's directive, Plaintiff used the clerk's restroom. The clerk questioned why Plaintiff was using the clerk's restroom. Plaintiff communicated this to the general manager. The manager asserted no one should question Plaintiff's use of the bathroom because "everyone has been notified" of the issue. The manager telling others about Plaintiff also exposed him to further mistreatment by others who may not have known he is transgender.

19. During the 2017 clerk bathroom incident referenced above, Plaintiff also spoke to a union representative from Defendant ATU Local 241. The union representative did not materialize to any action by the union representative or Defendant ATU Local 241.

20. In 2018, Plaintiff worked openly and closely with the American Civil Liberties Union to complain about and address discriminatory medical policies negatively impacting transgendered persons within Defendant CTA.

21. Upon information and belief, Defendant CTA provides healthcare directly to its employees, rather than going through an insurer. Prior to Plaintiff's protected activity in 2018, Defendant CTA did not cover medical procedures necessary for transgendered employees.

22. Following the ACLU's advocacy on behalf of Plaintiff, Defendant CTA agreed to cover medical procedures necessary for transgendered employees. This included Plaintiff's medical procedures for gender transition, which is a multi-step and lengthy process most people would not be able to afford if paying out-of-pocket.

23. Relying on Defendant CTA's representations that it would cover Plaintiff's required medical procedures, Plaintiff began receiving the required medical treatment.

24. Also in 2018, Plaintiff filed a charge of discrimination with the EEOC after he experienced harassment, including death threats, by coworkers.

25. Plaintiff was told by Defendant CTA that his union would have to address the matter of the harassment and death threats of other union members. Pursuant to this, Plaintiff also reported the harassment and threats to Defendant ATU Local 241. While both Defendants were aware of the harassment and death threats, no action was taken by either to address it.

26. Upon information and belief, Defendant ATU Local 241 President Keith Hill made disparaging remarks about Plaintiff's entitlement to protections and rights because Plaintiff is transgender. For example, Mr. Hill publicly criticized, to other union members, Plaintiff's request to the Defendant CTA to have medical treatments and procedures necessary for transgendered persons covered.

27. Following Plaintiff's protected activity in 2018, Defendant CTA transferred Plaintiff from the north side of the city to the south side of the city. Plaintiff had an interaction with Mr. Hill in which Mr. Hill asserted that Plaintiff's "bitching" would not work on the south side.

28. Following his protected activity in 2018, Plaintiff has been written up and suspended for alleged actions or inactions that are also committed by other similarly situated employees. These employees were not subject to the same discipline as Plaintiff, despite engaging the same alleged

conduct.

29. Plaintiff has continuously faced harassment from other employees at Defendant CTA and members of Defendant ATU Local 241. This includes, but is not limited to, being leered at by others, and having others criticize his right to coverage of his required medical procedures.

30. Between 2018 and 2020, Plaintiff began receiving treatments required for the gender transition process. Plaintiff has not yet begun the final, and most costly, stage of the process: gender transition surgery.

31. On or around June 8, 2020, Plaintiff requested Family and Medical Leave Act (FMLA) leave for ongoing back issues. Plaintiff was eligible for FMLA leave. Despite Plaintiff initially being told he was eligible, in or around October of 2020, Defendant CTA suspended Plaintiff without pay and charged him with FMLA falsification.

32. Pursuant to its FMLA falsification charge, Defendant CTA required Plaintiff to undergo two additional medical evaluations by physicians it selected. The second, and most recent, medical evaluation Defendant CTA required Plaintiff to undergo occurred on or about July 7, 2020.

33. Following the second medical evaluation, Defendant CTA informed Plaintiff he would need to undergo a third medical evaluation. Each time Plaintiff tried to schedule the third medical exam, he was informed that he needed to wait for instruction from CTA. Plaintiff was never scheduled for a third medical evaluation. Later, someone from the MLS group told Plaintiff his third medical evaluation was canceled.

34. Upon information and belief, federal law and CTA policies and procedures provisionally grant FMLA leave to employees during the period in which an FMLA leave request is reviewed. However, this was not applied to Plaintiff.

35. On January 7, 2021, Plaintiff was terminated by Defendant CTA. There was no legitimate business reason for Plaintiff's termination. Defendant CTA's stated reason for the termination was FMLA falsification. One of the proffered reasons provided by Defendant CTA for the termination was supposedly because Plaintiff did not undergo a third medical exam, despite Plaintiff being told that it

5

was cancelled.

36. Upon information and belief, other similarly-situated non-transgender employees who requested FMLA leave in 2020 were not charged with FMLA falsification and were not required to undergo multiple medical evaluations by physicians selected by Defendant CTA.

37. Upon information and belief, other similarly-situated non-transgender employees who were also charged with FMLA falsification in 2020 were not terminated.

38. Upon information and belief, charging and ultimately terminating Plaintiff for falsification of FMLA leave was a pretext to discriminate against Plaintiff because Defendant CTA did not want to continue covering the costs of Plaintiff's medical treatments for gender transition.

39. Upon information and belief, Defendant ATU Local 241 maintains an official Facebook page that has not been used since 2010, and an unofficial Facebook page that is used to-date to update members on meetings, union activity and other matters.

40. Upon information and belief, Defendant ATU Local 241 excludes certain members from joining the unofficial Facebook page.

41. Plaintiff filed a complaint with the Illinois Labor Relations Board sometime in or around March of 2021. Plaintiff was excluded from Defendant ATU Local 241's unofficial Facebook page shortly after ATU was notified of his complaint.

42. Upon information and belief, Defendant ATU Local 241's leadership, particularly Mr. Hill, have engaged in a pattern and practice of targeting employees/members that are engaged in protected activity by working with management within Defendant CTA to terminate those employees/members.

43. Defendant ATU Local 241 discriminated against Plaintiff by failing to represent Plaintiff, as Defendant ATU Local 241 does with other non-transgendered union members facing discipline from Defendant CTA, and for any grievances filed by non-transgendered union members against Defendant CTA.

44. Pursuant to the collective bargaining agreement between the Defendants, the agreement provides for a procedure for the union to challenge a disciplinary action by the Defendant CTA against

a Defendant ATU Local 241 member. This includes, but is not limited to, an accelerated process when a member has been terminated.

45. Following Defendant CTA's FMLA falsification charge against Plaintiff, but before he was terminated, Plaintiff reached out to Defendant ATU Local 241 for assistance to challenge Defendant CTA's disciplinary action. In response to Plaintiff's request, Defendant ATU Local 241 told Plaintiff there is nothing Defendant ATU Local 241 can do for Plaintiff and Plaintiff should accept the FMLA falsification charge brought by Defendant CTA.

46. Furthermore, Defendant ATU Local 241's president, Mr. Hill, told Plaintiff that there was nothing the union could do, and that he should allow the process to unfold, and that later he could grieve his discharge. Upon information and belief, this is not true and Plaintiff could have grieved the charge prior to his termination.

47. Following his termination, Plaintiff filed a grievance through Defendant ATU Local 241. Despite provisions in the collective bargaining agreement requiring an accelerated process in grievances involving termination, Plaintiff's grievance has been pending for more than a year.

48. Upon information and belief, the Plaintiff's treatment by Defendant ATU Local 241 is due to animus because Plaintiff is transgender.

49. The discriminatory conditions and retaliatory actions of Plaintiff's work environment have caused Plaintiff substantial pain and suffering. Plaintiff continues to suffer from social anxiety and panic attacks because of the work environment created by the Defendants.

50. Defendants' non-transgender employees and union members are not subjected to a hostile work environment wherein incidents of discrimination, and harassment routinely and continually go unaddressed. As such, Defendants improperly deny equal terms, conditions, and privileges of employment to transfer employees, like Plaintiff, and violated Plaintiff's civil rights to be free from discrimination.

51. As a result of the discriminatory actions and practices by Defendants described above, Plaintiff has suffered injury and damages, including, *inter alia*, financial damages (such as lost income),

emotional distress, humiliation, embarrassment, pain, and suffering, stigmatization, and loss of dignity.

### COUNT I: § 1983 VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION FOR SEX DISCRIMINATION AND RETALIATION
**(Against Defendant CTA)**

52. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

53. Plaintiff is a transgender male.

54. Plaintiff performed his job well.

55. Plaintiff was engaged in protected activity when he worked with the American Civil Liberties Union to complain about and address discriminatory medical policies negatively impacting transgendered persons within Defendant CTA.

56. Defendant CTA discriminated and retaliated against Plaintiff when it terminated Plaintiff for an FMLA falsification charge when other non-transgendered individuals with FMLA falsification charges were not terminated.

57. Defendant CTA also discriminated and retaliated against Plaintiff when it subjected him to different terms and conditions of employment than other non-transgendered employees. This includes, but is not limited to, subjecting Plaintiff to different terms and conditions with respect to his use of FMLA leave, asking Plaintiff to use a different bathroom than his identified gender and Defendant CTA permitting Plaintiff's harassers to create a hostile work environment for him and refusing to take the actions necessary to stop the ongoing harassment.

58. Defendant CTA's policy or custom enabled its agents and employees to act with deliberate indifference to Plaintiff's constitutional rights, including, but not limited to, the following ways: Employees, including those in supervisory positions, informed other employees of Plaintiff's complaints and encouraged them to harass Plaintiff, and used their positions to subject Plaintiff to different terms and conditions of employment than other non-transgendered employees and employees

8

who had not engaged in protected activity. Defendant CTA's policy was widespread and persistent, as indicated by the number of participants in Plaintiff's discrimination, retaliation, and harassment.

59. Defendant CTA's discriminatory conduct violated the Equal Protection Clause of the Fourteenth Amendment. Defendant CTA caused Plaintiff damages, including, but not limited to, lost potential earnings and emotional harm.

### COUNT II — DISCRIMINATION BECAUSE OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Against all Defendants)**

60. Plaintiff realleges, adopts, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

61. Plaintiff is transgender. Plaintiff was one of the few transgenders, if any, working at Defendant CTA and union member of Defendant ATU Local 241.

62. Title VII provides that employers and labor organizations may not discriminate against any individual with respect to his employment status, compensation, terms, conditions, or privileges of employment because of the individual's sex.

63. Defendant CTA is an employer defined by Title VII and Defendant ATU Local 241 is a labor organization defined by Title VII.

64. Plaintiff has been targeted and was discharged from employment because he is transgender. The discriminatory conduct includes, but is not limited to: discharge of employment, verbal harassment, unfair performance evaluation, and denial of FMLA leave.

65. The actions of Defendants were intentional, willful, in deliberate disregard of, and with reckless indifference to Plaintiff's rights.

66. By the conduct described above, Defendants and their agents intentionally discriminated against Plaintiff in the terms, conditions, and discharge of employment because of his gender, in

violation of Title VII of the Civil Rights Act of 1964.

67. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

68. As a result of the gender discrimination described herein, Plaintiff has suffered pecuniary and non-pecuniary damages, including loss of employment, loss of wages, loss of future employment opportunities, embarrassment, humiliation, emotional distress and has incurred attorneys' fees and costs in this matter.

### Count III – RETALIATION BECAUSE OF PRIOR PROTECTED ACTIVITY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Against all Defendants)

69. Plaintiff realleges, adopts, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

70. Plaintiff engaged in protected activity, including but expressly not limited to: when he complained about harassment and threats in 2018, when he sought coverage from his employer for medical treatments required for his gender transition, and when he exercised his right to said coverage of medical treatments by undergoing said medical treatments.

71. Plaintiff was retaliated against for engaging in protected activity when he was charged with FMLA falsification and terminated by Defendant CTA, and when he was denied representation from Defendant ATU Local 241 when it refused to grieve his FMLA falsification charge and later stalled on Plaintiff's grievance of his termination.

72. By the conduct described above, Defendants and their agents intentionally retaliated against Plaintiff in the terms, conditions, and discharge of employment because of his prior protected activity, in violation of Title VII of the Civil Rights Act of 1964.

73. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

74. As a result of the retaliation described herein, Plaintiff has suffered pecuniary and non-pecuniary damages, including loss of employment, loss of wages, loss of future employment opportunities, embarrassment, humiliation, emotional distress and has incurred attorneys' fees and costs in this matter.

**Count IV – INTERFERENCE WITH EXERCISE OF FMLA RIGHTS IN VIOLATION OF 29 U.S.C. 2615(A)(1)**
**(Against Defendant CTA)**

75. Plaintiff realleges, adopts, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

76. Plaintiff was eligible for FMLA leave. Plaintiff requested FMLA following his employer's required process. Plaintiff was initially told he was eligible for FMLA leave.

77. Defendant CTA interfered with the exercise of Plaintiff's FMLA rights by first charging him with FMLA falsification and requiring him to undergo multiple medical examinations by its selected physicians, and then by terminating him for taking FMLA leave.

78. Defendant CTA's interference with Plaintiff's exercise of FMLA rights has caused Plaintiff damages, including but expressly not limited to, lost income

79. As a result of the FMLA interference described herein, Plaintiff has suffered pecuniary and non-pecuniary damages, including loss of employment, loss of wages, loss of future employment opportunities, embarrassment, humiliation, emotional distress and has incurred attorneys' fees and costs in this matter.

**Count IV – INTERFERENCE WITH EXERCISE OF FMLA RIGHTS IN VIOLATION OF 29 U.S.C. 2615(A)(1)**
**(Against Defendant CTA)**

80. Plaintiff realleges, adopts, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

81. Defendant CTA retaliated against Plaintiff for exercising rights under FMLA by charging him with FMLA falsification and ultimately terminating him in January of 2021.

11

82. Defendant CTA's retaliatory discharge of Plaintiff has caused him damages, including loss of employment, loss of wages, loss of future employment opportunities, embarrassment, humiliation, emotional distress and has incurred attorneys' fees and costs in this matter.

83. Defendant's violation of FMLA provisions prohibiting retaliatory discharge was willful, wanton and/or conducted with reckless disregard for Plaintiff's rights and Defendant's obligations under the FMLA.

## CONCLUSION

**WHEREFORE,** Plaintiff, RUSSIA BROWN, respectfully requests an order granting the following:

A. Reinstatement to a position in another department at Defendant CTA that is not affiliated with Defendant ATU Local 241.

B. All backpay, lost benefits, and any other make-whole remedy to which Plaintiff is deemed entitled;

C. Compensatory damages

D. Punitive damages; and

E. Attorneys' fees;

F. Costs and any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims.

Respectfully submitted,
RUSSIA BROWN
Plaintiff

_____/s/Christina Abraham_____
By:   Christina Abraham
      Attorney for Plaintiff

12

February 7, 2022

Attorney No. 6298946  
Christina Abraham, Esq.  
Attorney for Plaintiff  
161 N. Clark Street, Suite 1600  
312-588-7150

February 7, 2022

Attorney No. 6298946  
Christina Abraham, Esq.  
Attorney for Plaintiff  
161 N. Clark Street, Suite 1600  
312-588-7150